IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DIONNE M. N., | CV 18-140-M-JCL |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq. Plaintiff protectively filed her claim in April 2015, alleging disability since March 27, 2015. Plaintiff's claim was denied initially and on reconsideration, and by an Administrative Law Judge after an administrative hearing. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff was 46 years old on her alleged onset date, and 48 years old at the time of the ALJ's decision in January 2017.

# I.    <u>Legal Standard</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## II.    <u>Discussion</u>

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the March 27, 2015 alleged onset date. At step two, the ALJ found that Plaintiff had one severe impairment: degenerative disc disease. The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ further found that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely consistent with the medical and other

evidence of record. The ALJ determined that Plaintiff had the residual functional capacity to perform a reduced range of light work. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a cashier checker. Alternatively, the ALJ found Plaintiff not disabled at step five because there were other jobs in the national economy that she could perform. (Doc. 9, at 96-101).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and makes three general arguments on appeal.[1] First, Plaintiff contends the ALJ erred in assessing several medical and other source opinions. Second, Plaintiff maintains the ALJ did not provide sufficiently clear and convincing reasons for discrediting her subjective symptom testimony. Finally, Plaintiff argues the ALJ erred in relying on vocational expert testimony elicited in response to an incomplete hypothetical question.[2]  The Court addresses each argument in turn.

### A.    Medical Opinions

---

[1]  The Commissioner maintains that Plaintiff's arguments are so lacking in specificity and citation to the record that the Court should consider them waived. While such deficiencies may affect the persuasiveness of Plaintiff's arguments, in the interest of resolving this case on the merits the Court will not consider the arguments waived.

[2]  In her reply brief, Plaintiff asks the Court to remand for an award of benefits because the Commissioner has not provided a "statement of facts relevant to the issues submitted for review" thereby violating her Constitutional right to due process. (Doc. 23, at 2-3). Contrary to Plaintiff's argument, the Commissioner's brief complies with the substantive requirements of Local Rule 78.2(b). The Court will address the issues presented on the merits.

Plaintiff argues the ALJ improperly rejected opinions provided by treating physician Dr. Michelle Martin-Thompson and nurse practitioner Michelle Smith, treating psychologist Dr. Michael Newman, and examining psychologist Dr. David Mahoney. Notably, Plaintiff does not elaborate on this general argument and does not explain why she believes the ALJ's discussion of these opinions was deficient. Nevertheless, as stated above, the Court will address Plaintiff's arguments on the merits.

Where there are conflicting medical opinions in the record, the ALJ is charged resolving the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ rejects the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

      1.    Dr. Michelle Martin-Thompson and Nurse Practitioner Michelle Smith

Sometime in 2013 (doc. 9, at 529), Plaintiff established care at the North Country Medical Clinic, where she was treated by Dr. Michelle Martin-Thompson and nurse practitioner Michelle Smith. (Doc. 9, at 525, 393-397, 434-463, 579-596). Smith saw Plaintiff approximately one to two times per month, and in February 2016 wrote a note stating that Plaintiff was "not able to work at this time" due to chronic back pain and fibromyalgia "and would not be able to return to work within the next 12 months." (Doc. 9, at 420). In May 2016, Smith completed a disability impairment questionnaire, co-signed by Dr. Michelle Martin-Thompson, indicating that Plaintiff suffers from chronic low back and neck pain. (Doc. 9, at 525-529). Plaintiff argues the ALJ failed to provide sufficient reasons for discounting Smith's opinions as set forth in the February 2016 note and May 2016 questionnaire.

Under the regulations in effect at the time of the ALJ's decision, nurse practitioners like Smith were categorized as "other sources" and did not constitute

acceptable medical sources.[1] See 20 C.F.R. §§404.1513(d)(1); 416.913(d)(1)

(2016). To the extent Smith was working closely with and under the supervision of

Dr. Martin-Thompson, however, her opinions can be considered those of an

acceptable medical source. See *Taylor v. Comm'r*, 659 F.3d 1228, 1234 (9th Cir.

2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). While an ALJ

must provide specific and legitimate reasons based on substantial evidence for

rejecting a controverted opinion from an "acceptable medical source," an "other

source" opinion is not entitled to the same deference and may be discounted if the

ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104,

1111-12 (9th Cir. 2012).

There is nothing in Smith's treatment notes to suggest that she was working

closely with and under the supervision of Dr. Martin-Thompson while treating

Plaintiff. Dr. Martin-Thompson did not sign any of Smith's treatment notes and did

not endorse Smith's February 2016 opinion stating that Plaintiff was unable to

work. Dr. Martin-Thompson did, however, co-sign the disability impairment

questionnaire Smith completed in May 2016. Thus, at least for purposes of the

---

1 The Social Security Administration has since updated its regulations to include nurse practitioners as acceptable medical sources for purposes of claims filed after March 27, 2017. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7) (2017); *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017).

May 2016 questionnaire, Smith qualifies as an acceptable medical source. Even assuming Smith also qualifies as an acceptable medical source for purposes of her February 2016 note, the ALJ provided sufficiently specific and legitimate reasons for giving both opinions minimal weight.

With respect to the May 2016 questionnaire, the ALJ noted that Smith left it largely incomplete. (Doc. 9, at 105). Smith listed Plaintiff's diagnoses and medications and described her primary symptoms as chronic back and neck pain, but deliberately left the functional capacity portion of the questionnaire blank. Smith stated that she does "not evaluate patients for functional capacity" and wrote that she is "not qualified to assess for functional capacity or give disability ratings." (Doc. 9, at 527, 529). Consistent with Smith's opinion, the ALJ accepted that Smith suffered from some degree of chronic back and neck pain as a result of her degenerative disc disease. To the extent the ALJ discounted the questionnaire, she permissibly did so in part because it was vague and nonspecific regarding Plaintiff's functional limitations. (Doc. 9, at 105). The ALJ permissibly discounted Smith's February 2016 note for the same reason. (Doc. 9, at 105). The one-sentence note simply stated without explanation that Plaintiff could not work for one year and did not contain any clinical findings or identify any specific limitations. (Doc. 9, at 420). See *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ further found that the February 2016 note and May 2016 questionnaire were not consistent with Smith's treatment notes, which reflected that during this period of time Plaintiff had a normal gait, normal range of motion of the spine, no sacroiliac joint pain, normal reflexes, normal sensation, and normal motor strength. (Doc. 9, at 105, 396, 440, 586). The ALJ reasonably cited the incongruity between Smith's treatment notes and her statement that Plaintiff could not work because of her physical impairments as an additional reason for giving Smith's February 2016 and May 2016 opinions little weight. See *Tommasetti v. Astrue*, 533 F.3d 1035, 10410 (9th Cir. 2008).

Plaintiff next argues the ALJ should have given more weight to Dr. Martin-Thompson's treatment notes from an appointment on January 30, 2017. In her notes, Dr. Martin-Thompson summarized Plaintiff's reported symptoms, reviewed imaging results from the prior six months, and wrote that "[b]ased on [Plaintiff's] reporting of symptoms, she would be unable to work due to her low back pain and neck pain." (Doc. 9, at 78-81). While it seems that Plaintiff faults the ALJ for not addressing Dr. Martin-Thompson's statements, these treatment notes were among

the materials submitted by the Plaintiff in support of her request for review by the Appeals Council and were not part of the record at the time of the ALJ's decision. (Doc. 9, at 78-81).

Where, as here "a claimant submits evidence for the first time to the Appeals Council, which considers the evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm's of Soc. Sec.*, 682 1157, 1159-60, 1162-63 (9th Cir. 2012). Dr. Martin-Thompson's statement regarding Plaintiff's inability to work was based on Plaintiff's subjective reporting of her symptoms and her notes from an appointment that took place after the date of the ALJ's decision do not provide a basis for changing that decision. The ALJ decision is supported by substantial evidence, including the opinions of state agency physicians Dr. John Vorhies and Dr. Francis Yamamoto, who both found that Plaintiff's physical limitations were consistent with the ability to perform a limited range of light work. (Doc. 9, at 157, 169).

### 2.    Dr. Michael Newman

Plaintiff established care with treating psychologist Dr. Michael Newman in May 2016 and has seen him once every few months since then. (Doc. 9, at 43). The

ALJ relied on Dr. Newman's progress notes from a May 2016 visit in finding that Plaintiff's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitations. (Doc. 9, at 99, 552-555). At the time of the ALJ's decision, there were no other progress notes from Dr. Newman in the record. On March 27, 2017 – nearly three months after the ALJ's decision – Dr. Newman completed a mental assessment form on which he check-marked several boxes indicating that Plaintiff's mental impairments resulted in moderate-to-marked limitations. (Doc. 9, at 43-45). He also indicated by check-mark those limitations would have been present as far back as March 2015. (Doc. 9, at 45).

Plaintiff again seems to suggest that the ALJ erred by not addressing Dr. Newman's assessment, but it was not part of the record at the time of ALJ's decision. Plaintiff submitted Dr. Newman's mental assessment to the Appeals Council, which appropriately found that because it post-dated the ALJ's decision it did not relate to the period at issue and did not provide a basis for changing the ALJ's decision. (Doc. 9, at 8). The assessment was not supported by any progress notes, and although Dr. Newman check-marked a box stating that Plaintiff's symptoms and limitations would have been present in March 2015, he did not begin treating her until May 2016.

The ALJ reasonably found based on Dr. Newman's May 2016 progress notes, examining psychologist Dr. David Mahoney's June 2015 report (doc. 9, at 414), and state agency consultants Dr. Mary Bogumill and Dr. Lisa Renner's opinions (doc. 9, at 156, 168) that Plaintiff's mental impairments caused no more than mild limitations. Dr. Newman's assessment does not provide a basis for changing the ALJ's decision and Plaintiff provides no meaningful argument to the contrary.

### 3.    Dr. David Mahoney

On June 24, 2015, psychologist Dr. David Mahoney performed a disability examination and diagnosed Plaintiff with a major depressive disorder, recurrent, mild in severity with anxious distress. (Doc. 9, at 417-18). Dr. Mahoney concluded that Plaintiff appeared "able to engage in some level of work activity" and "would benefit from services that could facilitate job placement for her." (Doc. 9, at 417).

To the extent Plaintiff suggests the ALJ did not provide sufficient reasons for discounting Dr. Mahoney's opinion, her argument is misplaced. The ALJ did not discount Dr. Mahoney's opinion, which did not identify any functional limitations and was consistent with the ALJ's determination that Plaintiff's mental impairments did not preclude her from working. The ALJ permissibly relied on Dr.

Mahoney's opinion in finding that Plaintiff's depression was not severe, and Plaintiff has not shown that the ALJ erred.

**B.      Other Source Opinions**

Plaintiff argues the ALJ erred by not giving more weight to opinions from licensed clinical social worker Danielle Kimbrell, and physician assistants Robert Griffin and Tracy Rogers. Social workers and physician assistants do not qualify as acceptable medical sources, which means the ALJ was required to provide germane reasons for discounting their opinions. See 20 C.F.R. §§ 404.1513(d)(1) and (3), 416.913(d)(1) and (3); *Molina*, 674 F.2d at 1111-12. Other sources are not qualified to give medical opinions but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. See 20 C.F.R. §§ 404.1513, 416.913(d).

1.      <u>Danielle Kimbrell</u>

Danielle Kimbrell is a social worker who saw Plaintiff on a weekly basis between February 19, 2016 and March 7, 2017. On May 25, 2016, Kimbrell completed a mental impairment questionnaire indicating that Plaintiff had several moderate-to-marked and marked limitations and would not be able to do work requiring sustained focus. (Doc. 9, at 533-537). Plaintiff argues the ALJ should given more weight to Kimbrell's assessment of her mental limitations.

The ALJ considered Kimbrell's opinion but gave it little weight on the ground that the extreme limitations she identified were not supported by the objective, subjective or anecdotal evidence of record. (Doc. 9, at 104). By way of example, the ALJ noted that Dr. Mahoney found that Plaintiff demonstrated normal attention, focus, and recall during her examination. (Doc. 9, at 104, 416). As the ALJ also pointed out, Plaintiff's health care providers often described Plaintiff as pleasant, cooperative, alert, and in no apparent distress. (Doc. 9, at 104, 436, 440, 447, 450, 580, 583, 586, 591, 595). The ALJ reasonably found this evidence was not consistent with Kimbrell's opinion that Plaintiff had moderate to marked limitations in several areas, including social interactions. The ALJ thus provided a germane reason for discounting Kimbrell's opinion. See *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

On March 7, 2017 – approximately two months after the ALJ's decision – Kimbrell completed a similar summary mental assessment form on which she identified several moderate-to-marked and marked limitations. (Doc. 9, at 49-51). Plaintiff submitted Kimbrell's mental assessment to the Appeals Council, which appropriately found that because it post-dated the ALJ's decision it did not relate to the period at issue and did not provide a basis for changing the ALJ's decision. (Doc. 9, at 8). As stated above, substantial evidence supports the ALJ's finding that

Plaintiff's mental impairments caused no more than mild limitations and Kimbrell's opinion does not provide a basis for changing the ALJ's decision.

### 2. Robert Griffin

Plaintiff provided the Appeals Council with records from office visits with physician assistant Robert Griffin on November 1, 2016 and February 21, 2017. (Doc. 9, at 65-68, 89-92). The Appeals Council found there was no reasonable probability that the November 2016 record would have changed the ALJ's decision, and found that because the February 2017 record post-dated the ALJ's decision it would not affect the disability determination. (Doc. 9, at 8).

At the November 2016 appointment, Griffin administered a right trochanteric bursa injection to treat Plaintiff's complaints of right hip pain. (Doc. 9, at 89). At the February 2017 appointment, Griffin observed that Plaintiff's hip pain had improved and confirmed that her chronic low back pain was being managed conservatively with physical therapy and anti-inflammatories. (Doc. 9, at 65-68). Griffin did not identify any functional limitations at either of these appointments. The ALJ's residual functional capacity for a reduced range of light work accounted for Plaintiff's low back pain and is supported by substantial evidence. Even assuming they are both properly part of the administrative record, Griffin's treatment notes do not provide a basis for changing the ALJ's decision.

3. <u>Tracy Rogers</u>

At an occupational health services disability examination on June 16, 2015, physician assistant Tracy Rogers concluded that Plaintiff was only able to stand and/or walk for a few minutes at a time but could use her extremities for light tasks and activities. (Doc. 9, at 401-411). Rogers thought that "many of the complaints [Plaintiff] has are affecting her ability to work" but was "not sure to what degree." Given Plaintiff's educational background and the fact that she had been performing manual labor her whole life, Rogers indicated she "needs some vocational training." (Doc. 9, at 410).

Plaintiff presumably takes the position that the ALJ should have given Rogers' opinion more weight but does not make any specific supporting argument. The ALJ actually found that Rogers' opinion was, in part, consistent with the evidence of record, which supported limiting Plaintiff to light work and limited reaching.[3] (Doc. 9, at 105). To the extent the ALJ discounted Rogers' opinion, she provided specific and legitimate reasons for doing so. First, the ALJ found some of the functional limitations set forth in the opinion were not consistent with Rogers'

_____

[3] The ALJ mistakenly attributed Rogers' opinion, which could be rejected for germane reasons, to Dr. Tim Schofield. (Doc. 9, at 105). This error was harmless because the specific and legitimate reasons provided by the ALJ for discounting portions of the opinion are also sufficient to discount the opinion of an other medical source.

clinical observations during the examination, which reflected that Plaintiff had grossly intact grip strength, full range of motion of the extremities, full muscle strength, and a normal gait. (Doc. 9, at 105, 410). Second, the ALJ discounted Rogers' opinion because it was not consistent with treatment records from other health care providers showing normal function and range of motion in her back, full range of motion in her arms and legs, and normal gait. (Doc. 9, at 440, 483, 539). Finally, the ALJ legitimately gave Rogers' opinion minimal weight to the extent it was based on Plaintiff's subjective complaints. (Doc. 9, at 105). In finding that Plaintiff could only walk for a few minutes at a time, for example, Rogers wrote that "Plaintiff says maximal walking time would be about five minutes without an assist." (Doc. 9, at 410).

Contrary to Plaintiff's cursory argument, the Court finds the ALJ reasonably evaluated Rogers's opinion, accepting some findings and discounting others for specific and legitimate reasons.

## B. Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th

Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence that she has medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 9, at 102).

Plaintiff testified that she has fibromyalgia which causes her constant pain, she cannot stand for more than five minutes at a time, has difficulty walking, and has anxiety that makes her feel like she is being watched or judged. (Doc. 9, at 120-121). Plaintiff reported that she could not walk more than 15 feet, sit for more than 20 to 30 minutes at a time, or lift more than five pounds. (Doc. 9, at 102).

Plaintiff also stated that she cannot get out of bed for two to three days during the average month. (Doc. 9, at 102).

The ALJ discounted Plaintiff's subjective testimony in part because her daily activities suggested her pain and limitations were not as severe as she alleged. In particular, the ALJ noted that while Plaintiff stated she had difficulty getting dressed, washing dishes, doing laundry, and driving, she reported that her impairments did not affect her ability to reach, complete tasks, or get along with others. (Doc. 9, at 102). In addition, the ALJ pointed out that although Plaintiff testified that large crowds make her anxiety worse, she reported regularly shopping in stores. (Doc. 9, at 102, 308). The ALJ reasonably found the fact that Plaintiff reported regularly going shopping, getting along with others, and having no problems reaching or completing tasks was not entirely consistent with her testimony as to the severity of her symptoms. See *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may discredit a claimant's subjective complaints based on inconsistencies between the claimant's described limitations and claimant's activities of daily living).

The ALJ further found that Plaintiff's allegations of disabling pain and limitations were not entirely consistent with the objective medical evidence. (Doc. 9, at102). For example, the ALJ discussed records reflecting that during physical

examinations Plaintiff frequently demonstrated a full range of motion, normal gait, normal reflexes, normal sensation, full muscle strength, and negative straight leg testing. (Doc. 9, at 102). The ALJ permissibly discounted Plaintiff's testimony in part because it was not consistent with the medical evidence. See *Carmickle v. Comm'r, soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

To the extent the ALJ accepted Plaintiff's allegations, he accounted for her functional limitations by restricting her to light work with various restrictions due to her degenerative disc disease. To the extent the ALJ discounted Plaintiff's subjective testimony, the Court finds that the ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for doing so.

## C.    Vocational Expert

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently had no evidentiary value for purposes of demonstrating that Plaintiff could perform her past relevant work or other work in the national

economy.

As discussed above, however, the ALJ properly weighed the medical evidence and evaluated Plaintiff's subjective testimony. To the extent the ALJ accepted that Plaintiff's impairments caused her pain and limitations, the ALJ took that into consideration in the residual functional capacity finding by limiting her to a range of light work. For the reasons set forth above, the Court find that the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step four and, alternatively, step five of the sequential evaluation process.

## IV.   Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 1st day of July, 2019

_____
Jeremiah C. Lynch
United States Magistrate Judge